v. Terry H. Collins, Defendant Appellee. Arguing for the Appellant, Ivan O. Taylor Jr. Arguing for the Appellee, Amaris Denik. Are both sides ready to speak? Yes, Your Honor. I just want to remind you that when you are not speaking, if you can please put your device on mute so that we don't get your background noise. And with that, Mr. Taylor. Thank you, Your Honors. Good morning. Good morning. My name is Ivan O. Taylor Jr. arguing on behalf of the people. We ask that this court reverse the trial court's order granting a motion to suppress as Officer McElmeel had a reasonable suspicion to support the traffic stop. Specifically, his observations of Defendant's cracked windshield. Traffic stops are governed by the principles set forth in Terry v. Ohio, which allow for brief investigatory stops when the officer has reasonable, articulable suspicion of criminal activity. Illinois courts have held that when an officer observes a driver commit a traffic violation, the officer is justified in briefly detaining the driver to investigate the violation. That is what occurred here with Officer McElmeel and the Defendant. Officer McElmeel observed two distinctive cracks on Defendant's front windshield. A cracked windshield is a violation of Section 12-503E of the Illinois Vehicle Code. As cited in our briefs, multiple courts have held that a cracked windshield justifies a traffic stop. Defendant has argued that a cracked windshield was merely a pretext as Officer McElmeel had knowledge of Defendant's potential role in drug distribution from observations made by another officer a week prior to the traffic stop. Regardless of whether the reason for the stop was pretextual, courts have repeatedly held that pretextual stops are fine as long as they are based on observed violations of traffic laws. Even if this court were to view the stop as not being justified, this court should still reverse the trial court as the evidence found Defendant's vehicle was subject to inevitable discovery. As Officer McElmeel testified, when he ran Defendant's place, the vehicle was marked as a public nuisance violation. Under Freeport Ordinance Section 464.03, a vehicle declared a public nuisance may be impounded. Officer McElmeel testified to getting permission to impound that vehicle and prior to the tow truck arriving, he conducted an inventory search. That inventory search is what led Officer McElmeel to discover the contraband in Defendant's vehicle. Because of the inevitable discovery doctrine, even if the stop was not justified, the evidence should not be excluded since it would have been discovered anyway. Despite the arguments put forth by Defendant that were seemingly set by the trial court, pretext in and of itself is not a basis to invalidate a stop. Officer McElmeel's observations of a cracked windshield justify a traffic stop, and even if the stop was not justified, the inevitable discovery of the contraband in Defendant's vehicle through impounding based on having a public nuisance violation would prevent exclusion of the evidence. Therefore, the people ask that this trial court reverse the trial court's order granting the motion to dismiss. Do you have your responses, Your Honors? Thank you, Mr. Taylor. Justice Bridges, question. Yes, thank you, Justice. Good morning, Mr. Taylor. Good morning. The question I have is, what information in the record would allow this court to conclude that the evidence in this case would have been inevitably discovered? In the record itself, Officer McElmeel did testify that he ran to a place for Defendant's Ford Escape, and it came up that there was a public nuisance violation on that vehicle, and he asked for permission to impound the vehicle. Under a free port ordinance, if a vehicle has a violation upon it, it may be impounded. He testified to getting the permission to impound the vehicle, and he conducted an inventory search prior to it being taken away. Our court in People v. Ocon held that the inventory search of a vehicle in police custody essentially fulfills the community caretaker function of a police agency. Can you explain what community caretaker function would be performed to inventory a vehicle for a nuisance violation? Give me one moment, Your Honor. I believe that for a nuisance violation, the community caretaking function would be performed. Well, if I understand it correctly, from Ocon, it was community caretaking because of the fact that, at least for that case, it was because just the... Actually, Your Honor, I'm not sure exactly, at least in this particular situation, what you're trying to ask. I think I just got confused myself. Well, we've indicated in our previous decision, again, People v. Ocon, O-C-O-N, that it's a community caretaker function when you're performing an inventory search. My question to you is, what would you say, in this case, a nuisance violation would satisfy the community caretaker function? I know you're arguing for procuring your vehicle, but could you explain that to us? Well, I believe, in this case, the purpose of the inventory is to ensure that when the police do take a property from an individual, it's to protect the contents of the vehicle itself, to ensure that besides the vehicle, that the person's property, there's no additional harm will come to it. So that's why it's community caretaking. In this sense, since the vehicle was going to be impounded, even for a public nuisance violation, it was to ensure that whatever personal items might be in the vehicle that belonged to the defendant would still be there for him when he came to retrieve his vehicle at a later date. Okay. In the same area with the inventory search, I know courts have questioned whether parking ticket violations can be the basis for an inventory search. Are you aware of any case involving a nuisance violation? I am not aware of any case involving a nuisance violation. Also, Mr. Taylor, in your brief, you cite Ramsey, Jones, and another case, I can't think of the name right now, but you cite those cases. Any of those cases provide that a cracked windshield automatically constitutes reasonable suspicion to justify a stop of a vehicle? They didn't specify their holding in that way. They merely stated that the officer's observation of a cracked windshield was sufficient to justify the traffic stop. They didn't say that a cracked windshield always justifies, that a cracked windshield does justify. Do any of these cases make comments on the severity of the crack? They do not. Not a single case describes what the crack was, only that the crack existed. What about, you know, in those cases where the trial court specifically found the police testimony was not credible? Well, I do know for this case, when the trial court made its order, when it stated that it found the credible officer's belief that the officer's observations were not credible, it was saying that in this context that it did not believe the reason that the officer gave for wanting to stop the vehicle. Because in context of the trial court's order, the trial court viewed Officer McNeil as pretentiously stopping the vehicle only because of the prior observation of the defendant involving possible drug transactions. Okay, and do you agree that if this court agrees with the trial court that there was no rational basis to stop a defendant, that there would be no need to conduct an inventory search of the vehicle? I believe you're asking that if you find that there's no basis for the stop, that there'd be no basis for the inventory search. Well, the thing is, the inventory search itself, the officer ran it, the defendant was parked in the driveway, the officer ran the plates, which an officer can do, and the plates indicated that this is a public nuisance violation, which under Freeport ordinance would allow it to be impounded. And the officer did receive permission to impound the vehicle for that reason. So even if this court were to find that the stop was not justified, the inventory search can still be allowed. So you believe the ordinance would allow an officer to drive through a community, run a license plate, and then if it showed a nuisance violation, previous nuisance violation as you have in your ordinance, that vehicle then could be impounded and searched. I'm removing the arrest and stop because that seems to be your argument in your brief when you argue regarding the ordinance. So is that your position? Our position is that these two are two separate arguments. Our primary argument is that the stop is fine, that Officer McNeil observed the crack wouldn't shield, which would justify the stop. Our second argument is that even if the stop is not fine, with this inventory search, another discovery will have occurred, which will preclude excluding this evidence. And as to your question regarding the officers being able to run a vehicle, a search on a license plate, discovering that it happens to have a public nuisance violation, which the ordinance will allow for it to be impounded, yes, a police officer can do that. That's what the ordinance, that's what the Freeport decided they want to have as their ordinance, and that's allowed the police to do so. Thank you, Mr. Taylor. Justice Sostek, I have no further questions. Thank you so much. Mr. Taylor, in some of the testimony that I read, I don't think it's unreasonable for the trial court to believe that the officer was sitting there observing traffic and the defendant drove by. And after he drove by, he thought in his mind, isn't that the car that was involved in this drug transaction? Is that the way you feel it happened? I'm not sure precisely what was in the officer's mind. I'm not sure how he, the exact wording of his testimony, that is something that the trial court could have concluded. Yeah, that was basically what his testimony. He proceeded to follow him. That's pretextual, that's legal, correct? Yes. Even if it's a pretext, it still is not, that is not, a pretext does not invalidate a stop in and of itself. Right. But then he stopped him, correct? Correct. And he basically says the reason he stopped him was because he saw the cracked windshield. Yes. Is that correct? Yes, Your Honor, that's correct. But the testimony, or the evidence, basically, the photos of the windshield and the fact that he never took the photos and went to the next day somewhat belie that testimony. I know you disagree, but my question is, you rely on Perry, and Perry is an objective standard to decide whether the facts available to the officer at the time would lead to a reasonable caution to believe that there was a crime afoot or there was, the stop was appropriate, basically, correct? Yes, it's an objective standard. Okay. So if the court felt that the officer was not credible and that he never observed that cracked windshield because it would be impossible to observe it, he never observed it until he told to the left of him, what is the standard and how do we reverse that trial court judge who felt the police officer was operating under a subjective standard as opposed to an objective standard? Well, in this case, the trial court never said that, never said that I don't believe this officer ever saw the crack. It only indicated that I don't believe this crack was the basis for the officer's talk about the fact that this crack was really not able to observe until he came up to the left of him, correct? I believe the officer testified that he saw the crack, like, he definitely saw the crack when defendant was turning into the parking spot, to the driveway. So it was observed at that point, going from the road to the driveway itself. Okay. And I don't know the exact page number of that particular testimony, but I believe that is in the records. But the reason that this court can reverse the testimony is one, the trial court's order is focused on pretext and that this officer McNeil was merely acting on pretext, irrespective of whatever he observed, the trial court decided that because of the pretext of this stop, it was going to grant the motion to suppress. And unfortunately for the trial court, that is not correct. Pretext does not preclude the validity of a stop is whether or not there's a reasonable suspicion of a traffic violation. And as to your point, as to the severity of the cracks, none of the case law that says a crack is sufficient ever described a severity of a crack. They only indicate that a crack existed. And it seems as if for the trial court, it looked at severity and indicated that since this would never be sufficient to convict, it's not sufficient to justify a stop, which is not correct. It doesn't have to be a beyond a reasonable doubt, correct? That's correct. It only needs to be reasonable suspicion, which is less than probable cause, and which is somewhere in between any percentage before you get to reasonable doubt. So for how the trial court viewed, at least from what the trial court wrote in its order, it did not use a reasonable suspicion standard. It seemed to have used a beyond reasonable doubt, which is incorrect. Under reasonable suspicion, it just has to be the potential for the violation. It doesn't matter whether or not the person can be convicted of this traffic violation, or whether or not the potential violation is there. In this case, the potential of the violation is there. So you're saying that whether the police officer felt that it was whatever the basis for the judge's ruling, his skepticism, if you will, that's really not relevant because based upon Terry, he had that basis to stop him. Is that what you're saying? What I'm trying to say is that the trial judge's skepticism led to his particular order. Right. But the observations by the officer are, like, the trial court doesn't question the only question is the reason the officer decided to stop. He doesn't question that, yes, he may have deserved this, but he did it for pretext. But the... Well, but he found the officer not credible in his statement that the reason that he stopped him was the sight of the windshield. I mean, he is in a better position to judge the credibility of the witnesses than we are. Isn't that true? Well, he's in a better position to judge the credibility of the witnesses. As you said, the credibility wasn't based upon whether or not he made the observation. It was whether or not it was a basis for the stop. And he said the trial court said the basis for the stop was because of past observations of drugs and not this observation that the court, not the observation that Mr. McAmel made at the time. But he never said that... But because he didn't feel it was credible, he would have been able to see that from the vantage point that he said that the officer testified, correct? Well, not correct, Your Honors. For how the trial court ordered, the credibility determination he made was the reason for the stop, not whether or not Officer McAmel made observations of the crack. Okay. The inevitable discovery argument, did you make that below or did the state make that below? For the inevitable discovery argument, I do not believe... That argument specifically was not made below to my knowledge. The evidence that I used for the inevitable discovery argument was presented below to the trial court. But the actual specific argument that, oh, this is an inevitable discovery, I don't believe was made by the prosecutor below. All right. Thank you so much, Mr. Taylor. Thank you, Your Honor. Ms. Danek. Yes. May it please the court, counsel, my name is Amaris Danek from the Office of the State Appellate Defender, and I represent the defendant appellee, Terry Collins. Your Honors, this case does not turn on a legal question. It turns on findings of fact, and it turns on witness credibility. Judge Hauser did not believe that Officer McAmel pulled Mr. Collins over due to an observed traffic violation. And so in this case, without a traffic violation, there is no basis for the stop. Judge Hauser's ruling is based on the application of the facts in this case to the law. Because of that, his decision on the motion to suppress should be affirmed. Despite what the state is arguing, the state basically makes two arguments. First, that the judge improperly considered the pretextual nature of the stop. And second, that the judge applied an incorrect legal standard in assessing whether the stop was legitimate based on the correct windshield. And despite what the state's arguing, we are not disputing that pretextual stops are permissible, as long as they are based on an observed violation of a traffic law. In this case, the court simply found that Officer McAmel did not observe a traffic violation and the law is clear. There must be an observed traffic violation. An officer cannot pull someone over for a solely pretextual reason and then justify it by finding a violation after the fact. The stop must be justified at its inception by that observed traffic violation. The judge wrote in his written decision that although McAmel attempted to, quote, pointing to the correct windshield, this court found that testimony to be incredible. And so if you take a look at the reference to the pretextual nature within the context of the judge's findings, when he mentioned the pretextual nature, he states, quote, the only reason McAmel initiated this counter. The judge fully recognized the law regarding pretext and that pretext cannot be the only reason for the stop. He says this again in his ruling. Officer McAmel's test actions in this case were based entirely on events occurring a week prior. Pretext cannot be the entire reason for the stop. Not only is it presumed that the judge knows and applies the law correctly, the very language in the judge's own ruling illustrates he knew the law that pretext cannot be the sole reason for the stop. The judge did not believe that Officer McAmel pulled Mr. Collins over for a correct windshield. And when the judge did not believe that McAmel pulled him over for a correct windshield, pretext became the only rationale for the stop. And that is what is not permitted by the Fourth Amendment. The judge really could have stopped his analysis there, because believing McAmel regarding the justification for the stop was a necessary condition to find that the stop was justified at its inception. When the judge did not believe that McAmel pulled Mr. Collins over due to an observed traffic violation, then there just simply isn't any evidence that the stop was justified at its inception. An officer can't pull someone over pretextually and find a violation after the fact, regardless of the nature or severity of the violation. And so the state continues to focus on how bad was the crack, was the crack a violation, et cetera. But in reality, the severity of the crack really ceased to matter once the judge found the crack was not the basis for the stop. And so believing McAmel regarding the justification for the stop was a necessary but not sufficient condition to satisfy the Fourth Amendment requirements set out in Terry v. Ohio. Because in Terry v. Ohio, there also needed to have been specific and articulable facts supporting the reason for the stop. And so although the judge didn't need to get into that, he did. He said, hypothetically, even if the court found that testimony attempting to justify the stop credible, that still would not provide a sufficient basis for his actions. And the reason is that the support the stop. The court found the very nature of the crack failed to support it. The judge asked the question set out in Papal v. Price, quote, would the facts available to the officer at the moment of the seizure warrant a man of reasonable caution in the belief the action was appropriate? The judge's answer was no. And so in his hypothetical, even if he believed McAmel pulled Mr. Collins over due to the cracked windshield, the facts available, the specific articulable facts regarding the nature, the position, the size, et cetera, would not have warranted the stop. And the judge's findings on this matter, the matter of McAmel's credibility, were well supported by the record. There are photographic exhibits in this case, and I do encourage your honors to review Exhibit D in particular. The photograph in the state's Exhibit D shows the position of Mr. Collins's vehicle from the perspective of the officer's car. The crack in the windshield is not visible in that photograph. Furthermore, you can note that the two side rear windows and the back window, oh, the two side rear windows are tinted. And so if the crack is not visible, even from the vantage point in the photograph, it is absolutely reasonable that the judge could conclude and ask, how is it possible that this crack could have been visible through either the rear window or the tinted side windows as the officer followed the car and the car turned into the private driveway? This strongly supports the court's credibility findings. There were also additional discrepancies in the officer's testimony and omissions and discrepancies and improbabilities may impeach the testimony of the witness. I would note that the state argues in its reply that, quote, the trial court makes no explicit credibility determination in its written order. That is just a disingenuous statement. The judge explicitly found the justification for the stop incredible. He describes it as an attempt at a justification. The judge notes, even if this court were to find McElmeel's testimony credible, he clearly made a credibility finding and this hearing was about the facts and about witness credibility. When the entire hearing turned on the justification for the stop, for the state to say there was no credibility determination is shocking, especially given the strong language the court used in its written ruling. Furthermore, the states were counting on their opening brief, they make no mention whatsoever of these statements by the court regarding the credibility of the single witness on the single fact that mattered the most in determining the outcome of this case. It didn't matter if he found him credible as to the fact he was a police officer or the background information. What mattered was he did not find him credible on the reason for the stop. The judge's credibility findings were well supported on the record and the finding on this issue was not against the manifest way to the evidence. I would note that the case of People v. Mott out of the fourth district is directly on point to this case. It deals with the same statute, although a separate subsection of the statute, but both have to do with material impairment of a driver's vision. Mott explained that not every air freshener hanging from a rearview mirror is going to not every crack in a windshield is going to constitute a basis to pull someone over. The state attempts to distinguish it on the basis of that air freshener, but it really makes no difference. The inquiry is the same. The statute regarding a crack in the windshield requires a condition so defective as to materially impair the driver's view. This strong language is set out by the legislature in the statute itself. This is not the judge trying to apply some beyond a reasonable doubt standard as the state continues to reiterate, even though that language also never appeared in the trial court's ruling. The court never even suggested he needed to prove beyond a reasonable doubt that it materially impaired, but the objective facts available to the officer at the moment he pulled Mr. Collins over had to cause a man of reasonable caution to believe his action was appropriate. Not every crack is going to meet that requirement. The judge made a factual determination that in this case it did not. For these reasons, the court should affirm the trial court's ruling, granting the defense's motion to suppress. I'll also briefly address the state's inevitable discovery doctrine argument. That argument was raised for the very first time on appeal. It was argued either at the hearing on the motion to suppress or in the state's motion to reconsider. Because the defense had no opportunity to counter that below, the court had no opportunity to address that whatsoever, it's our position the state has forfeited that argument on appeal. However, if this court doesn't choose to address this argument, the state cannot and has not proven that the evidence seized would have been lawfully discovered or admissible under that doctrine. And it's the state's burden to show this by a preponderance of the evidence. Your Honors, I would note specifically the ordinance itself neither permits or requires the inventory search. It permits the towing of the vehicle in certain circumstances, but it does not require an inventory search. The ordinance goes through the specific things that are required under the ordinance, but an inventory search is not one of them. Therefore, the inventory search must necessarily have been based, I hear the timer, the inventory search must necessarily have been based on a separate police procedure. Thank you. Justice Ferguson. Thank you, Justice. Ms. Danek, as you know, we are to give great deference to the trial court's factual findings. And I know my colleagues both had an opportunity to look at both the state and defendants' exhibits. So my question is, does the fact that the defendant attempted to flee the scene in any way supports the argument? So with regard to the attempt to walk away from the car, Your Honor, first, I would note that the state abandoned that argument on appeal. But with regard to him attempting to flee, he had parked his vehicle in a private driveway, and the description was that he was walking away from the car. And so that McElmeel did follow him and did detain him, you know, potentially for this reason, and he then detained him in the police vehicle. However, once McElmeel was already separated himself from the car, once he then detained him in the police vehicle, there just was no reason then to search the car. This is under the case Arizona versus Gantt, but it's not a search subsequent to arrest anymore. And so even if in some cases the officer may have had a reason to, you know, pat him down after, you know, leaving the vehicle, it would not have extended to a search of the actual vehicle itself. Okay. Okay. And counsel, in reviewing the free port of ordinance, I believe it's 464.04, it would appear there were some significant issues with that ordinance. For one, as you pointed out, it does not provide for an inventory search of an impound vehicle. So my question is, that was never raised in the trial court. Why shouldn't this be considered forfeited? Your Honor, I believe that the state has forfeited this argument in terms of their suggestion that it could be found under the doctrine. Now, in our response, I did raise the issue that potentially, you know, again, hypothetically, because the court below never addressed this, this could be a separate basis on which this court might affirm the trial court's ruling. Because this court may sustain a judgment on any ground appearing on the record, regardless of whether the trial court's reasoning was incorrect. But it is our position that the state forfeited the argument that this would be somehow still admissible under the inevitable discovery doctrine. So your challenge to the inventory search is based entirely on the basis that the seizure, the stop itself was improper. Is that correct? Both, that the impoundment was incorrect and the inventory search was incorrect. And so in the context of a vehicle inventory, both the seizure, meaning the impoundment, and the search, meaning the inventory search, have to themselves meet the requirements of the Fourth Amendment. And so our position is that neither of those two criteria were met in order to justify a lawful discovery of this evidence. Thank you, Ms. Danik. And Justice Shostak, I have no further questions. Thank you. The judge in the ruling seemed to be a little confused on pretextual stops. At one point, he basically says, you know, I appreciate that there are litany of case law that says that pretextual stops can be okay. But then he said that this is still a pretextual stop and I don't think it should be allowed. Pretextual stops are allowed, aren't they? Yes, they are. I believe that that argument was made by the defense, but not explicitly adopted by the judge's decision. The judge's language in his written decision repeats that his ruling is that the only reason that the counter was initiated and apprehended was due to that observation the week prior. And so although pretextual, I'm sorry, I don't want to interrupt. Although pretextual stops are permissible, they cannot be the only reason. And he uses that language twice. He says that it's the entire reason for the stop. It's the only reason for the stop. And phrasing it in that way and pointing it out in that way really lends, again, a clear sense that the judge understood that it cannot be the only reason for the stop. No, you have a tow of the vehicle which the ordinance allows. Wouldn't it be prudent for a police officer to do an inventory to protect themselves after the tow? And isn't that what an inventory is generally used for? Yes. However, there has to be some evidence regarding the propriety of that search. And so three criteria have to be satisfied, and that, in fact, is one of them. First, the impoundment has to be lawful. Second, the purpose itself is meant to protect the owner's property from police claims, police from danger, et cetera, exactly as your point. And third, the inventory must be conducted pursuant to a reasonable standardized policy and not a pretext for an investigatory search. And so People v. Nash held that those three criteria have to be satisfied. And so in the court below, there simply was not testimony to support those three criteria. What criteria was not satisfied? I mean, your opponent argues that these are basically two separate incidents, because even if he didn't see whatever you indicated he saw, he still was able to run the plate separate and apart and come up with the fact that this vehicle had an ordinance violation. So wasn't satisfied? Yes. What wasn't satisfied was actually the requirements under the ordinance that allows for the towing and impoundment of the vehicle. I would point to Section 464.04, and that basically the local ordinances allows the towing and impoundment except as provided in that section. And so taking a look at Section 464.04, there has to be a specific notice given to the registered owner of the vehicle that any subsequent offense shall be subject to the motor vehicle to impoundment. At trial, he just testified, hey, I got permission to tow the car pursuant to this ordinance. Can't recall what the nuisance violation was. There was no specific details about it. There was no details that there had been a subsequent offense or whether the criteria in the ordinance was actually satisfied. There was no testimony that he even determined that Mr. Collins was the registered owner of the vehicle. There was no evidence presented that the owner had been notified that his vehicle might be subject to impoundment. And there were just huge gaps that showed that the criteria in the ordinance itself was not even satisfied to justify the impoundment. Second, the other really big problem with the testimony is that the inventory, again, the inventory is not set out as justified by the ordinance. The inventory had to have been based on a police protocol regarding inventory searches. And courts say that there has to be something. There doesn't have to be a written explanation of the process of an inventory search. There doesn't have to be really a fairly low bar as to what needs to be searched. But there was not even that small, low bar met because he simply said, once there was going to be a tow, I started conducting an inventory search. No testimony there was a policy to conduct inventory searches pursuant to towing the vehicle. You know, as reasonable as that may be, there needed to be an explanation of the policy and that he conducted that search relative to that policy. Okay. I have no further questions. Thank you very much, Ms. Manick. Mr. Taylor. Thank you. Rebuttal. Thank you, Your Honor. Just a few things on rebuttal. Defendant points to the language of the trial court's order to try to indicate how he found Officer McElmeel's testimony incredible that he saw the crack. That's not what's in the order. The language itself is, the language of the order indicates that the trial court seemingly has followed the argument set by Defendant's trial counsel that a pretext is insufficient to be a basis for a stop. As you pointed out, the argument presented by the trial counsel is it's still a pretextual stop and I that's what that was what was argued by defense counsel and it's seemingly in the order itself the trial court applied that belief to this case. The defendant also brings up the three criteria needed in order to justify the impoundment and inventory search for that argument. Defendant points at the fact that the Officer McElmeel never testified to specific procedures for the inventory search in order to to justify it. However, I would note that in Defendant's motion to suppress, Defendant only ever questioned the seizure and never questioned the search. For Defendant to now say the search is independently bad and say that the state failed to present evidence to the trial court when they had no foreknowledge to do so doesn't make sense. And finally, Defendant also points to section 464.04 as to preventing the Officer McElmeel from even suggesting to have the vehicle impounded. However, that ordinance says specifically, when Officer has reason to believe that a motor vehicle is being used in violation of this chapter, the Officer shall determine whether the person in possession of said motor vehicle is a registered owner. If the person in possession of a motor vehicle is not the registered owner and the Officer has no record of the same prior offense related to the use of one vehicle, the Officer shall provide notice to the registered owner that any subsequent offense under this chapter shall subject the vehicle to impoundment. It's only if the person in control of the vehicle is not the registered owner that a subsequent offense is necessary, not when the registered owner is in possession of the vehicle. Anything further? Just in conclusion, we ask that this court reverse the trial court and reverse the grant of the motion to suppress. Thank you, Your Honors. Thank you, Mr. Taylor. Justice Bridges, any questions on this rebuttal? Just one. No, I believe you asked it previously, so I apologize. I have no further questions. Thank you. You know, Mr. Taylor, it's hard for me to get past the credibility finding here by this court. You cited several cases on, you know, the slight cracking in the windshield as you were asked by Justice Bridges, and none of those cases talked about credibility, really. So how, again, how do we get past this trial court's very strong ruling on the credibility of this police officer and his credibility in the stock? Well, Your Honor, it's just how the order by the trial court is written seems to read that the credibility finding made by the trial court was not as to whether Officer McNeil observed the crack, but whether as to the basis for Officer McNeil's reason for the stop itself. The trial court never stated that it did not believe Officer McNeil never saw the crack. It only indicated that it believed Officer McNeil made a stop based upon pretext, which is allowed. And then he saw the crack thereafter. The trial court basically says that he then finds the crack after the stop. The pretextual stop, he then finds the crack. I mean, it's one thing to say, okay, this guy was dealing drugs the other day. I'm going to file one. The guy drives, and then he doesn't put on his turning signal, and the police officer pulls him over. In this case, doesn't the trial court basically find that he pulled him over and then see the crack and show? Well, in this case... It sounds to me like that's what the trial court said. Well, Your Honor, from how the state has interpreted the order from the trial court was that irrespective of what Officer McNeil observed, since the primary purpose was pretext, and in conjunction with that, that the trial court focused on whether or not the crack was there, the material impairment of the crack is only necessary with regards to actual conviction of the violation, not sufficient to conduct the stop initially. For the trial court, it seemed to have combined the pretextual nature of the stop and whether or not how severe the crack was to determine that it doesn't, like, that crack wasn't good enough for me to convict, so it's not going to be good enough to stop. So obviously, it was just a pretext. Therefore, I want to grant the motion to suppress. Okay. Thank you. That makes sense. Okay. Thank you very much, Mr. Taylor. Thank you, Your Honors. Ms. Manick, Mr. Taylor, thank you very much for your very interesting arguments here today. We will take this case under advisement, allow Justice McLaren to have the opportunity to listen to the arguments, and we'll make a decision in due course. Thank you so much. Have a great day. Stay safe. Thank you. Thank you.